## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JAMES L. YEAGER, PH.D., and** | ) | |
| **MIDWEST RESEARCH** | ) | |
| **LABORATORIES, LLC** | ) | **Case No.** |
| | ) | |
| **Plaintiffs,** | ) | **Judge:** |
| | ) | |
| **-vs-** | ) | **Magistrate Judge:** |
| | ) | |
| **INNOVUS PHARMACEUTICALS, INC.,** | ) | **JURY TRIAL DEMANDED** |
| **Defendant.** | | |

## COMPLAINT

NOW COME Plaintiffs, JAMES L. YEAGER, Ph.D., and MIDWEST RESEARCH LABORATORIES, LLC, by and through their attorneys, WILKES & MCHUGH and GOLDBERG WESIMAN CAIRO, LTD., and with their complaint against INNOVUS PHARMACEUTICALS, INC., who allege as follows:

### PARTIES, JURISDICTION AND VENUE

1.      James L. Yeager, Ph.D., is an adult individual and resident of Illinois residing at 476 Oakwood Avenue, Lake Forest, IL 60045.

2.      Midwest Research Laboratories, LLC ("Midwest Research Laboratories") is a privately held company existing under the law of Illinois with its principal place of business at 476 Oakwood Avenue, Lake Forest, IL 60045.

3.       At all times relevant hereto, Plaintiff, James L. Yeager, Ph.D. ("Dr. Yeager") was the Operating Manager of Midwest Research Laboratories who was the chief executive officer of Midwest and the public face of the company throughout the pharmaceutical industry.

4.      Innovus Pharmaceuticals, Inc. ("Innovus") is a corporation existing under the laws of Nevada headquartered with its principal place of business in California at 9171 Towne Centre Drive, Suite 440, San Diego, CA 92122, where the corporation's officers direct, control, and coordinate the corporation's activities and its registered agent in Nevada at 701 S Carson St. Suite 200, Carson City, NV 89701.

5.      Innovus is in the business of commercialization, marketing, distribution, and sale of CIRCUMSerum™ internationally, and Sensum+® in the United States and including in the State of Illinois and within this District.

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity of citizenship).

7.      Complete diversity of citizenship exists between the Plaintiffs and Defendant, and a true case and controversy exists.

8.      The amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred within the Northern District of Illinois.

**GENERAL ALLEGATIONS COMMON TO ALL COUNTS**

10.      This case arises out of the Defendant's unauthorized use of Dr. Yeager's name, likeness, and identity in nationally and globally distributed advertising material for Innovus's products, CIRCUMSerum™ and Sensum+®.  Plaintiffs bring these claims for violation of the right to publicity, false designation of origin, false endorsement, deceptive business practices, and unfair competition against Defendant to remedy the damage caused by Defendant's unauthorized

advertisement materials.

11.     Dr. Yeager received his Ph.D. in Industrial and Physical Pharmacy in 1978 from Purdue University and specializes in the formulation of topical creams for various health and wellness needs.

12.     Dr. Yeager's livelihood depends, at least in part, upon his reputation in his community for expertise and professionalism.

13.     Similarly, Midwest Research Laboratories' competitiveness in its field depends, in large part, upon Dr. Yeager's reputation for expertise and professionalism and the high esteem he has built for his individual works and the success of Midwest.

14.     On or about April 15, 2012, Centric Research Institute ("CRI"), a California corporation in the business of commercialization, marketing, distribution, and sale of CIRCUMSerum$^{TM}$, engaged Midwest Research Laboratories and Dr. Yeager to develop a topical cream used to treat men with sexual dysfunction.

15.     At the time of this engagement, Dr. Yeager was not interested in, did not intend, and did not agree to, any form of commercializing, marketing, promoting, or endorsing the end product that would ultimately be put to market that was developed by Dr. Yeager and Midwest.

16.     Subsequently, Midwest Research Laboratories and CRI entered into confidential one-way and two-way disclosure agreements for purposes of clarifying and allowing either party to use the other's confidential information solely for the purpose of developing and commercializing products that had been disclosed between the parties, and such other purposes as may be agreed upon by the parties in writing.

17.     Neither of the agreements between Midwest and CRI permitted the use of Dr. Yeager's name, likeness or other related information, individually, or as a representative of

Midwest. To date, there exists no express or implied agreement whatsoever that, by virtue of Midwest's role in developing the product, CRI or Defendant had any right to use Dr. Yeager's name or likeness for commercialization, promotional and/or endorsement purposes, either individually, or as a representative of Midwest.

18.     Midwest Research Laboratories and CRI also entered into a Consulting Agreement ("Consulting Agreement") for CRI to engage Midwest Research Laboratories to perform certain services including formulation of topically applied preparations designed to increase sexual and/or genital sensitivity.

19.     On October 15, 2012, the Consulting Agreement was amended by Midwest Research Laboratories and CRI to include a provision that Midwest Research Laboratories would agree not to directly or indirectly develop or cause to be developed any product that directly or indirectly competed with CIRCUMSerum$^{TM}$.

20.     Neither the confidential disclosure agreements, the original Consulting Agreement, nor the amended Consulting Agreement gave CRI the right to use Dr. Yeager's name or likeness for commercialization, promotional, and/or endorsement purposes, either individually, or as a representative of Midwest.

21.     Pursuant to the agreements between Midwest Research Laboratories and CRI, Midwest Research Laboratories and Dr. Yeager formulated a commercial product.

22.     Pursuant to the Consulting Agreement, Midwest Research Laboratories and Dr. Yeager agreed to assign only all their rights, title, and interest in and to any and all ideas, improvements, inventions and works of authorship to CRI.

23.     On April 25, 2012, CRI filed U.S. Provisional Application No. 61/638,106, (the "'106 Application") entitled "SENSITIZATION COMPOSITION AND METHOD OF USE"

with the United States Patent & Trademark Office ("USPTO") for Midwest Research Laboratory's and Dr. Yeager's invention.

24.     On March 15, 2013, CRI filed Patent Cooperation Treaty Application No. PCT/US2013/023271 (the "PCT Application"), also entitled "SENSITIZATION COMPOSITION AND METHOD OF USE", with the US PCT Receiving Office to preserve its right to file corresponding national patent applications in the United States and in foreign countries to protect the Inventions in the United States and in countries outside the United States.

25.     On October 31, 2013, the PCT Application was published as PCT Publication No. WO 2013/162769 A1.

26.     On October 21, 2014, CRI filed U.S. Utility Patent Application No. 14/395,919 (the "'919 Utility Application"), entitled "SENSITIZATION COMPOSITION AND METHOD OF USE", with the USPTO to protect the Inventions disclosed therein, as well as in the '106 Provisional Application and the PCT Application, in the United States.

27.     On April 23, 2015, the '919 Utility Application was published by the USPTO as U.S. Patent Publication No. US2015/0110904 A1.

28.     On April 25, 2017, CRI filed U.S. Utility Patent Application, No. 15/496,861 (the "861 Utility Application"), also entitled "SENSITIZATION COMPOSITION AND METHOD OF USE", with the USPTO to further protect the Inventions disclosed therein, as well as in the '106 Provisional Application and the PCT Application, in the United States.

29.     On August 10, 2017, the '861 Utility Application was published by the USPTO as U.S. Patent Publication No. 2017/0224755 A1.

30.     CRI launched CIRCUMSerum$^{TM}$ on April 13, 2013 as CRI's first offering in a pipeline of innovations related to men's health and wellness.

31. Upon information and belief, on April 19, 2013, CRI and Innovus then entered into an asset purchase agreement pursuant to which Innovus acquired the global rights to market CIRCUMSerum<sup>TM</sup>, and upon information and belief, CRI retained the right to commercialize CIRCUMSerum<sup>TM</sup> in the United States, while Innovus commercialized the product in the United States under the name Sensum+®.

32. Upon information and belief, CIRCUMSerum<sup>TM</sup> and Sensum+® are identical topical products. Sensum+® is commercialized in the United States and worldwide by Innovus; CIRCUMSerumTM is commercialized worldwide (excluding the United States) by Innovus; and CIRCUMSerumTM is commercialized in the United States by CRI.

33. Notwithstanding the fact that Defendant has never received, nor has Dr. Yeager given, his permission to use his name, image, identity, or likeness for commercial or other purposes or to imply his association, endorsement, or connection with the goods and services offered by Defendant, Dr. Yeager's name, image, identity, and likeness are being used by Innovus on its website and advertisement materials circulated worldwide to promote, endorse, advertise, and commercialize CIRCUMSerum<sup>TM</sup> and Sensum+® throughout the United States and the World. Exemplars of the advertisements and marketing materials are attached hereto as Exhibit A.

34. Upon information and belief, Defendant Innovus has circulated various advertisements and marketing materials, and/or have published advertisements and marketing materials on digital and print mediums including in newspapers, magazines, pamphlets, and on Facebook, Twitter, Instagram, Pintrest, and Amazon, some or all of which are accessible by the citizens of all fifty (50) states of the United States, including:

    a. the News Star, in Louisiana on July 18, 2016;

    b. the Gwinnet Daily Post, in Georgia on September 21, 2016;

c.   the Star Press, in Indiana on September 26, 2016;

d.   the Greenville Sun, in Tennessee on October 6, 2016;

e.   the Macomb Daily, in Michigan on October 20, 2016;

f.   the Daily Banner, in Tennessee on October 27, 2016;

g.   the San Marcos Daily Record, in Texas on January 17, 2017;

h.   Metro.us Magazine, in New York, Massachusetts, and Pennsylvania on January 20, 2017;

i.   the Honolulu Star, in Hawaii on January 30, 2017;

j.   the San Diego Union Tribune, in California on January 30, 2017;

k.   the Chicago Sun Times, in Illinois on February 1, 2017;

l.   the Denver Post, in Colorado on February 7, 2017;

m.  the Philadelphia Inquirer, in Pennsylvania on February 9, 2017;

n.   the Boulder Weekly, in Colorado on March 1, 2017;

o.   the Norwich Bulletin, in Connecticut on May 23, 2017;

p.   the Billings Gazette, in Montana on June 22, 2017;

q.   the Star Democrat, in Maryland on July 25, 2017;

r.   the Kitsap Sun, in Washington on August 3, 2017.

s.   the New York Post, in New York on August 7, 2017;

t.   the East Valley Tribune, in Arizona on August 10, 2017;

u.   the Daily Item, in Pennsylvania on August 10, 2017;

v.   the Providence Journal, in Rhode Island on August 22, 2017;

w.  the Manteca Bulletin, and the Ripon Bulletin, in California on October 3, 2017;

35.     These commercial advertisements, publications, and marketing materials falsely suggest, imply, and/or outwardly state that Dr. Yeager endorses the respective products. Some of these publications even falsely attribute quotes to Dr. Yeager which are either false or misleading.

36.     Defendant has never received, nor has Dr. Yeager or Midwest given, his permission to use his name, image, identity, or likeness for commercial or other purposes or to imply his association, endorsement, or connection with the goods and services offered by Defendant.

37.     Because of Dr. Yeager's education, training, experience, and noteworthy accomplishments individually and as an officer of Midwest, he is widely known as an accomplished and trustworthy figure in the pharmaceutical field.

38.     Dr. Yeager's name, identity, image, likeness, and endorsement have substantial commercial value in promoting pharmaceutical products as a result of his reputation for integrity, professionalism and scientific accomplishment.

39.     In light of the foregoing, Plaintiffs have been damaged by Defendant, whose unauthorized advertisements and marketing materials violate Dr. Yeager's right to publicity and/or falsely imply the endorsement of Defendant's goods and services by Dr. Yeager.

40.     The advertisements and marketing materials, which contain lewd and lascivious remarks and associate Dr. Yeager, and by extension, Midwest, with what is being marketed as a novelty item, cause irreparable damage to Dr. Yeager and Midwest's commercial interests by diminishing the value of their endorsement and by diminishing Dr. Yeager's reputation for professionalism, and scientific integrity.

41.     The reputational injury endured by Dr. Yeager and Midwest is a direct and proximate result of Defendant's conduct because Defendant's deception of consumers has and will continue to cause them to withhold trade from Dr. Yeager and Midwest.

42.     Dr. Yeager and Midwest have been damaged by Defendant's misappropriations and deceptive trade practices, and will be damaged by Defendant's continuing misappropriations and deceptive trade practices.

43.     Defendant's conduct herein is in violation of Plaintiffs' federal and state common law rights, as well as federal statutes and similar statutes in all fifty states.

## COUNT I: VIOLATION OF RIGHT OF PUBLICITY
### (YEAGER v. INNOVUS)

44.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     Defendant's unauthorized use of Plaintiff's identity for commercial purposes is a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/1-60.

46.     Defendant's unauthorized use of Plaintiff's identity for commercial purposes is a violation of the Plaintiff's right of publicity as set forth at common law and by statute in all fifty states, including, but not limited to:

a. Alabama Code § 6-5-771 *et seq*., in that Defendant used Yeager's name, identity, and likeness in advertisement material for competitive and economic advantage; Defendant's use of Yeager's name, identity, and likeness would identify Yeager to an ordinary, reasonably viewer or listener; and Defendant did not have Yeager's consent to use his name, identity, and likeness;

b. Arkansas Code § 4-75-1101 *et seq*., in that Defendant commercially used the readily identifiable name, photograph, or likeness of Plaintiff without his authorization;

c. California Civ. Code § 3344 *et seq.,* in that Defendant used Yeager's name, likeness, or identity without his permission; that Defendant gained a commercial benefit by using Yeager's name, likeness, or identity; that Yeager was harmed, and that Defendant's conduct was a substantial factor in causing Yeager's harm;

d. Florida Stat. § 540.08 *et seq.,* in that Defendant published, printed, displayed or otherwise publically used for purposes of trade or for commercial or advertising purpose the name, portrait, photograph, or other likeness of Dr. Yeager without the express written or oral consent;

e. Hawaii Rev. Stat. § 482P-5 *et seq.,* in that Defendant used or authorized the use of Yeager's name, voice, signature, or likeness, on or in goods, merchandise, or services entered into commerce in Hawaii, and/or for the purposes of advertising products, merchandise, goods, or services without express or implied consent of Dr. Yeager;

f. Indiana Code § 32-36-1-1 *et seq.*, in that Defendant used Dr. Yeager's personality rights for a commercial purpose during his lifetime without having obtained previous written consent;

g. Kentucky Rev. Stat. § 391.170 *et seq.*, in that Defendant commercially exploited Yeager's name and likeness without his consent;

h. Massachusetts Gen. Laws 214 § 3A *et seq.*, in that Defendant used Dr. Yeager's name, picture, and/or other likeness without Yeager's consent to advertise the Defendant's business, product, and/or for other similar commercial purpose;

i. Nebraska Rev. Stat. § 20-202 *et seq.*, in that Defendant exploited Dr. "Yeager's name, picture, portrait, and/or personality for advertising or commercial purposes without consent;

j. Nevada Rev. Stat. § 597.770 *et seq.*, in that Defendant engaged in commercial use of the name, signature, photograph, and/or likeness of Dr. Yeager without first having obtained written consent for such use;

k. New York Civ. Rights Law § 50 *et seq.*, in that Defendant used Dr. Yeager's name, picture, or likeness for advertising or trade purposes without Dr. Yeager's written consent resulting in damages;

l. Oklahoma Stat. § 1449 *et seq.*, in that Defendant knowingly used Dr. Yeager's name, voice, signature, photograph, and/or likeness for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods and/or services without the consent of Dr. Yeager;

m. Pennsylvania Cons. Stat. § 8316 *et seq.*, in that Defendant appropriated Dr. Yeager's name and likeness, which has commercial value, for its own use or benefit without his written consent and as a result Dr. Yeager suffered harm;

n. Rhode Island Gen. Laws § 9-1-28 *et seq.*, in that Defendant knowingly used Dr. Yeager's name, portrait, and/or picture for commercial purposes without Dr. Yeager's written consent;

o. South Dakota Cod. Laws § 21-64-2 *et seq.*, in that Defendant used Dr. Yeager's name and likeness for a commercial purpose without his express written consent;

p. Tennessee Code § 47-25-1105 *et seq.*, in that Defendant knowingly used and/or infringed upon the use of Dr. Yeager's name, photograph, or likeness directed to the public at large as an item of commerce for purposes of advertising products, merchandise, goods, or services without Dr. Yeager's prior consent;

q. Utah Code § 45-3-1 *et seq.*, in that Defendant published an advertisement in which Dr. Yeager's personal identity was used in a manner which expressed or implied that Dr. Yeager approves, endorses, has endorsed, or will endorse the specific subject matter of the advertisement; and consent was not obtained for such use from the Defendant;

r. Virginia Code § 8.01-40 *et seq.*, in that Defendant knowingly used Dr. Yeager's name, portrait, or picture for advertising purposes or for the purposes of trade without Dr. Yeager's written consent;

s. Washington Code § 63.60.010 *et seq.*, in that Defendant used or authorized the use of Dr. Yeager's name, signature, photograph, or likeness, for purposes of advertising products, merchandise, goods, or services without written or oral, express or implied consent of Dr. Yeager;

t. Wisconsin Stat. § 995.50(2)(b), in that Defendant used, for advertising purposes or for purposes of trade, Dr. Yeager's name, portrait or picture without having first obtained Dr. Yeager's written consent.

47. Defendant's use of Plaintiff's identity was unauthorized because Defendant did not obtain Plaintiff's consent to the use of his identity in connection with the advertisement. In fact, Defendant did not even request Plaintiff's consent.

48. Defendant's use of Plaintiff's identity was willful because it used Plaintiff's identity intentionally and with knowledge that its use was not authorized and was beyond the terms of the Consulting Agreement.

49. Plaintiff has been damaged by Defendant's unauthorized use of his identity.

WHEREFORE, Plaintiff, Dr. Yeager, requests that relief be granted in his favor and against Defendant for (a) damages sustained by Plaintiff, including disgorgement of Defendant's profits, in an amount greater than $5,000,000; (b) punitive damages; (c) costs including attorneys' fees; (d) permanent injunction requiring Defendant to refrain from any use of Plaintiff's identity without

prior authorization from Plaintiff; (e) an order requiring Defendant to place corrective advertising in future advertisements; and (f) such other and further relief as the Court deems just and proper.

**COUNT II:**
**VIOLATION OF SECTION 43(a) OF THE LANHAM ACT –**
**FALSE DESIGNATION OF ORIGIN**
**(YEAGER v. INNOVUS)**

50.     Plaintiff, Dr. Yeager, re-alleges and incorporates by reference paragraphs 1 through 49 of this Complaint as set forth at length herein.

51.     Defendant's unauthorized use of Dr. Yeager's identity, including his name and persona, in its advertisements constitute false and/or misleading representations of fact that falsely imply Dr. Yeager's endorsement of Defendant's goods and services.

52.     Defendant's unauthorized use of Dr. Yeager's identity, including his name and persona, in interstate commerce:

      a.     is likely to cause confusion, mistake or deception as to the affiliation, connection or association of Centric Research Institute with Plaintiff or as to the origin, sponsorship, or approval of Centric Research Institute's goods and services by Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); or;

      b.     misrepresents the nature, characteristics, or qualities of Centric Research Institute's goods, services, or commercial activities in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

53.     Plaintiff has been damaged by these acts, all in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     This case is an exceptional case pursuant to 15 U.S.C. § 1117(a).

WHEREFORE, Plaintiffs request that relief be granted in his favor and against Defendant for (a) damages sustained by Plaintiff including Defendant's profits, in an amount greater than $5,000,000, such damages to be trebled pursuant to 15 U.S.C. § 1117; (b) costs including attorneys' fees; (c) a permanent injunction requiring Defendant to refrain from any use of

Plaintiff's identity without prior authorization from Plaintiff, (d) an order requiring Defendant to place corrective advertising in future advertisements; and (e) such other and further relief as the Court deems just and proper.

**COUNT III:**
**VIOLATION OF THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT**
**(YEAGER and MIDWEST v. INNOVUS)**

55.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 54 of this Complaint as set forth at length herein.

56.     815 ILCS 510/2(a) of the Illinois Deceptive Trade Practices Act, which codifies the Uniform Deceptive Trade Practices Act, provides, *inter alia*, that: a person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person…(2) causes likelihood of confusion or of misunderstanding as to affiliation, connection, sponsorship, approval, or certification of goods and services; (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another; (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have…(12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

57.     815 ILCS 510/1(5) of the Illinois Deceptive Trade Practices Act defines a "person" as "an individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership, unincorporated association…"

58.     Defendant's commercial advertisements, publications, and marketing materials featuring Dr. Yeager were designed to created, did create, and continue to create, a likelihood of consumer confusion by falsely claiming Dr. Yeager, and by extension, Midwest Research Institute

13

had any affiliation, connection, sponsorship, approval, and/or certification Defendant's goods when, in fact, none exists.

59.     Defendant's commercial advertisements, publications, and marketing materials represent their products have Dr. Yeager's sponsorship, approval and other characteristics which they do not have.

60.     The use of Dr. Yeager's name, identity, image, likeness, and endorsement is likely to confuse and mislead consumers exercising ordinary care in purchasing Defendant's products as consumers are unlikely to realize that neither Dr. Yeager nor Midwest Research Institute had any connection to Defendant's goods or products as they falsely represent.

61.     Defendant's commercial advertisements, publications, and marketing materials featuring Dr. Yeager have disparaged, and continue to disparage, his name, reputation and scientific practice, and by extension, the brand identity of Midwest.

62.     Defendant's acts constitute unfair methods of competition and unfair or deceptive acts or practices as those acts were expressly taken created a likelihood of confusion or misunderstanding as to Dr. Yeager's sponsorship or approval of Defendant's goods or services, or created a likelihood of confusion as to Defendant's affiliation, connection or association with Dr. Yeager and Midwest Research Institute.

WHEREFORE, Plaintiffs request that relief be granted in their favor and against Defendant for (a) a permanent injunction requiring Defendant to refrain from any use of Plaintiff's identity without prior authorization from Plaintiff; (b) an order requiring Defendant to place corrective advertising in future advertisements; (c) an order enjoining Defendant from any and all efforts to solicit future business via existing advertisements featuring Plaintiff in any way, shape or form; (d) an order awarding attorney's fees incurred in this action and; (e) such other and further relief

as the Court deems just and proper.

## COUNT IV:
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND
### DECEPTIVE BUSINESS PRACTICES ACT
### (YEAGER and MIDWEST v. INNOVUS)

63.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 62 of this Complaint as set forth at length herein.

64.    815 ILCS 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act provides, *inter alia*, that: A person engages in consumer fraud and deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person enlists the "use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. "

65.    815 ILCS 505/1(c) of the Illinois Consumer Fraud and Deceptive Business Practices Act defines a "person" as "any natural person or his legal representative, partnership, corporation (domestic and foreign), company, trust, business entity or association…"

66.    Claims brought by businesses who are not consumers of each other's products are specifically allowed under the Act in cases where the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns.

67.    The individual and collective acts and practices of the Defendant as fully detailed herein included the use of deception, false pretense, misrepresentation, concealment, suppression and omission of material fact to falsely represent to consumers that Dr. Yeager, and by extension

Midwest Research Institute, were affiliated with Defendant's goods and products beyond the express terms of the Consulting Agreement.

68.    Defendant's advertisements bearing Dr. Yeager's name, identity, image, likeness, and endorsement violate Section 2 of the Uniform Deceptive Trade Practices Act, as codified in Illinois as the Illinois Deceptive Trade Practices Act, via the creation of ongoing consumer confusion by falsely claiming or intimating that Dr. Yeager has an affiliation, connection, sponsorship, approval, and/or certification of Defendant's goods, when none exists.

69.    Defendant's trade practices, specifically advertisements bearing Dr. Yeager's name, identity, image and/or likeness, fraudulently misrepresent, conceal, suppress and omit the material fact that there is no relationship between Dr. Yeager or Midwest Research Institute and Defendant beyond the express terms of the Consulting Agreement.

70.    Defendant's trade practices, specifically advertisements bearing Dr. Yeager's name, identity, image, likeness, and endorsement, are expressly and purposefully marketed to and directed at the general public and all consumers in the marketplace via publication in widely circulated newspapers in major American cities across all fifty states.

71.    Due to the medium and distribution of advertisement, the misrepresentations, concealments, suppressions and omissions contained within Defendant's advertisements are not targeted to any specific demographic and may be seen by any consumer reading the newspapers in which said advertisements are placed.

72.    Consumers in the marketplace, both domestically and abroad, are likely to confuse Dr. Yeager, and Midwest Research Institute by extension, as being associated with, endorsing or advertising for, Defendant's goods and products.

73. Defendant did knowingly produce and publish said advertisements with intent that consumers would believe Dr. Yeager and Midwest Research Institute promoted, advertised or otherwise endorsed Defendant goods and products.

74. Given the mass distribution of Defendant's advertisements, said advertisements are not limited to current consumers of Defendant's products.

WHEREFORE, Plaintiffs request that relief be granted in his favor and against Defendant, jointly and severally, for (a) an order awarding Plaintiff actual and punitive damages in an amount to be determined at trial pursuant to 815 ILCS 505/10(a); (b) an order awarding attorney's fees and costs incurred in this action and; (c) such other and further relief as the Court deems just and proper.

**PLAINTIFFS demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.**

JAMES L. YEAGER, Ph.D., and
MIDWEST RESEARCH LABORATORIES, LLC

By:    /s/ Lance Northcutt
       Lance Northcutt, Esq.
       **Goldberg Weisman Cairo, Ltd.**
       1 East Wacker Drive, Suite 3800
       Chicago, Illinois 60601
       P: (312) 464-1200
       F: (312) 245-2215
       lnorthcutt@gwclaw.com
       ARDC# 6278144

       /s/ Robert E. Salyer
       Robert E. Salyer, Esq. (IL #6270985)
       Wilkes & McHugh, P.A.
       429 N. Broadway
       P. O. Box 1747
       Lexington, KY 40588-1747
       (859) 455-3356
       (859) 455-3362 (facsimile)
       rsalyer@wilkesmchugh.com