## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| JAMES L. YEAGER, PH.D. and MIDWEST RESEARCH LABORATORIES, LLC,      ) | |
| ) | |
| *Plaintiffs*,   ) | |
| ) | |
| v.   ) | No. 18-cv-397 |
| ) | |
| INNOVUS PHARMACEUTICALS, INC.,   ) | |
| ) | Judge Thomas M. Durkin |
| *Defendant*.   ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiffs James Yeager and Midwest Research Laboratories, LLC bring this action against Innovus Pharmaceuticals, Inc. for reputational harm suffered as a result of several publications Innovus made using Yeager's name. Innovus has moved to dismiss the complaint in full under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction in Illinois and Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief. For the following reasons, Innovus's motion to dismiss is granted in part and denied in part.

### BACKGROUND

Yeager has a Ph.D. in physical pharmacy and specializes in the formulation of topical creams for various health and wellness needs. He is the CEO of plaintiff Midwest and the public face of the company throughout the pharmaceutical industry. In April 2012, Centric Research Institute ("CRI"), engaged Midwest and Yeager to develop a topical cream used to treat men with sexual dysfunction. Under the agreements between Midwest and CRI, Midwest and Yeager formulated a

commercial product and assigned all their rights to the invention to CRI. As a result of their partnership, CRI launched CIRCUMSerumTM on April 13, 2013.

On April 19, 2013, CRI and Innovus entered into an asset purchase agreement under which Innovus acquired the global rights to market CIRCUMSerumTM, and CRI retained the right to commercialize CIRCUMSerumTM in the United States. Innovus commercialized the product under the name Sensum+®.

The gist of Plaintiffs' complaint is that although Yeager never gave permission to use his name, image, identity, or likeness in connection with the product, Innovus marketed the product with Yeager's name and implied endorsement. Specifically, Plaintiffs allege Innovus circulated advertisements and marketing materials in newspapers, magazines, pamphlets, and on social media sites. These materials "suggest, imply, and/or outwardly state" that Yeager endorses the product. Further, Plaintiffs allege that some of these publications falsely attribute quotes to Yeager, place Yeager in a false light, and falsely claim Yeager offered a satisfaction guarantee on the product. Plaintiffs allege at least one of these advertisements was circulated in Illinois—specifically, in the Chicago Sun Times in February 2017.[1]

Plaintiffs bring one federal claim and four state claims against Innovus: (1) violation of the Illinois Right of Publicity Act and various other state statutes; (2) violation of Section 43(a) of the Lanham Act; (3) violation of the Illinois Deceptive Trade Practices Act; (4) violation of the Illinois Consumer Fraud and Deceptive

---

[1] Jurisdictional discovery also uncovered that Innovus made the product available for purchase by individuals in Illinois, shipped the product to individuals in Illinois, and generated revenues from sales of the product to persons in Illinois. *See* R. 49.

Business Practices Act; and (5) a common law false light claim. Innovus argues that the Court lacks personal jurisdiction over it and that Plaintiffs' claims do not state a claim for relief in any event. The Court will first address the personal jurisdiction issue, and then turn to Innovus's 12(b)(6) arguments.

## ANALYSIS

### I. Personal Jurisdiction

A challenge to a court's exercise of personal jurisdiction over a defendant is made under Federal Rule of Civil Procedure 12(b)(2). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). The Illinois long-arm statute[2] requires nothing more than the standard for federal due process: that the defendant have sufficient contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In other words, a defendant "must have purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010) (quoting *Burger King Corp. v. Rudzewicz*,

---

[2] This Court has subject matter jurisdiction because the parties are diverse and the damages sought exceed $75,000. The Lanham Act is an independent basis for federal jurisdiction. But because the Lanham Act does not have a special federal rule for personal jurisdiction, the Court looks to the law of the forum for the governing rule. *See* Fed. R. Civ. P. 4(k)(1)(A); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014), *as corrected* (May 12, 2014).

471 U.S. 462, 474 (1985)). When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff has the burden of demonstrating personal jurisdiction over the defendant. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court resolves all factual disputes in Plaintiffs' favor. *Id.*

There are two types of personal jurisdiction. General jurisdiction exists when the party's affiliations with the forum state "are so constant and pervasive as to render [it] essentially at home" there. *Daimler*, 571 U.S. 117, 122 (2014). Because Innovus is a Nevada corporation with its principal place of business in California, R. 15 ¶ 4, and Plaintiffs have not otherwise asserted that this Court may exercise general jurisdiction over Innovus, the Court considers only specific jurisdiction.

Specific jurisdiction grows out of "the relationship among the defendant, the forum, and the litigation." *Walden,* 571 U.S. at 284. This type of jurisdiction requires that "(1) the defendant [] purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012). Where, as here, the plaintiff's claims are for intentional torts, the purposeful availment inquiry focuses on whether the conduct underlying the claims was purposely directed at the forum state. *Tamburo*, 601 F.3d at 702. In such cases, courts look to whether the plaintiff has shown "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge

that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id.* at 703 (citing *Calder v. Jones*, 465 U.S. 783, 789-90 (1984)). This is known as the *Calder* test. A brief discussion of *Calder* is helpful here.

In *Calder,* an entertainer sued a magazine reporter and his editor for libel, invasion of privacy, and intentional infliction of emotional distress in California. *Id.* at 785. The reporter and the editor were residents of Florida and worked for the National Enquirer, a Florida corporation with its principal place of business in Florida. *Id.* The editor had no contacts with California; the reporter had travelled to California a few times in connection with his work, however, did most of the research for the story in dispute over the phone. *Id.* Both the reporter and the editor challenged the California court's jurisdiction over them. *Id.* at 785-86. The reporter and the editor argued that neither should be subject to California's jurisdiction simply because the article appeared in California. *Id.* at 786.

The Supreme Court held that jurisdiction was proper because the reporter's and the editor's "intentional, and allegedly tortious, actions were expressly aimed at California." *Id.* at 789. The Court reasoned:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both [the entertainer's] emotional distress and the injury to her professional reputation, was suffered in California. In sum, California [was] the focal point both of the story and of the harm suffered. Jurisdiction over petitioners [was] therefore proper in California based on the "effects" of their Florida conduct in California.

*Id.* at 788-89. Moreover, the reporter and the editor knew that the article would have its greatest effect in California because the article's subject lived there and the National Enquirer had its largest circulation there. *Id.* at 790.

The Supreme Court also applied the "effects" test in a companion case, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). In *Keeton*, an editor of Hustler Magazine sued the magazine for five separate acts of libel in a New Hampshire court. *Id.* at 772. Hustler Magazine was an Ohio corporation with its principal place of business in California. *See id.* However, the magazine sold between 10,000 and 15,000 copies of its magazine in New Hampshire each month. *See id.*

Hustler Magazine argued that a New Hampshire court's exercise of jurisdiction over it would be unfair because its only contact with the forum was circulation of its magazine. *See id.* at 770. The Supreme Court disagreed. The Court stated that Hustler Magazine's "regular circulation of magazines in [New Hampshire was] sufficient to support an assertion of jurisdiction in a libel action based on the contents of the magazine." *Id.* at 773-74. In addition, the Court agreed with the lower court that Hustler Magazine's circulation of its publication throughout New Hampshire was purposeful activity that "'inevitably affected persons in the state.'" *Id.* at 774. Furthermore, "[s]uch regular monthly sales of thousands of magazines cannot by any stretch of the imagination be characterized as random, isolated, or fortuitous." *Id.* Thus, the minimum contact requirements of due process were met and jurisdiction over Hustler Magazine was proper. *Id.*

Here, Plaintiffs allege Innovus deliberately distributed at least one publication in Illinois in February 2017.[3] R. 15 ¶ 34. That publication is one of the publications at issue in Plaintiffs' complaint. The effects of its actions were felt in Illinois, because that is where Plaintiffs were located. Like in *Calder*, by publishing an advertisement in a local newspaper directed at residents of Illinois concerning an Illinois resident, Innovus created a connection between itself, Illinois, and this litigation. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (explaining that although sending an email blast to residents within a forum state would not confer jurisdiction, the same would not be true if the defendant deliberately targeted residents of a specific state); *Riddell, Inc. v. Monica*, 2003 WL 21799935, at *3 (N.D. Ill. July 25, 2003) ("Impact would have minimum contacts with

---

[3] Although this article was readily accessible on the internet, in its motion to dismiss and reply Innovus suggested that it did not advertise in Illinois. *See* R. 38 at 2 ("At most, Plaintiffs refer to an alleged publication in the Chicago Sun-Times, but Plaintiffs do not attach this publication to their Amended Complaint or make any allegations regarding its contents. Plaintiffs attach some alleged 'exemplars' of publications as Exhibit A to the Amended Complaint, but there is no allegation that Innovus published any of these 'exemplars' in Illinois, nor do the exemplars themselves bear any indication that they were published in Illinois."). Only until the Court ordered Innovus to respond to Plaintiffs' discovery requests did Innovus acknowledge the Sun-Times publication as well as other connections to Illinois. Even so, Innovus's discovery responses were ladled with unnecessary objections. *See* R. 49-1 (objecting to the interrogatories because the words "market," "advertise," "publication," "revenues" and "in Illinois" were vague or ambiguous). "While discovery may be the bane of modern litigation, parties and their counsel have an obligation to participate fully, fairly and cooperatively in that often needlessly contentious endeavor." *Fudali v. Napolitano*, 283 F.R.D. 400, 401 & n.2 (N.D. Ill. 2012) (citing *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000) (Posner, J.) and Frank Easterbrook, Discovery as Abuse, 69 B.U.L.Rev. 635 (1989) and listing cases rejecting boilerplate objections of vagueness or ambiguity). The Court will not tolerate this conduct and reminds counsel for Innovus of its Rule 11(b) obligations.

Illinois . . . since Impact directed the mailing of an advertisement for its product to an individual with the Chicago Bears, in Illinois. The court finds that defendants have established minimum contacts with Illinois."); *Int'l Truck & Engine Corp. v. Dawson Int'l Inc.*, 216 F. Supp. 2d 754, 760 (N.D. Ind. 2002) ("Dawson is correct that advertisements directed at a national audience are not 'offers to sell' within a particular forum. However, where specific advertisements are purposefully circulated to residents of the forum state, a defendant has purposefully availed itself to suit in the forum state."). The Court finds Innovus's publication in the Chicago Sun-Times sufficient to confer jurisdiction over it.

## II.    12(b)(6) Motion

As to the merits of Plaintiffs' complaint, Innovus seeks to dismiss all five claims. First, Innovus argues Plaintiffs' Illinois Right to Publicity claim (Count I) is barred by the statute of limitations. Second, Innovus argues Plaintiffs cannot state a claim under the Lanham Act (Count II). Third, Innovus contends Plaintiffs fail to allege a basis for injunctive relief under the Illinois Deceptive Trade Practices Act (Count III). Fourth, Innovus states Plaintiffs have failed to allege an economic injury for their Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count IV). Finally, Innovus argues Plaintiffs also have failed to sufficiently plead their common law false light claim. The Court will address each argument in turn.

### A.  Legal Standard

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must

provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

## B. Right of Publicity (Count I)

In Count I, Yeager alleges that Innovus's misappropriation of Yeager's right of publicity and unauthorized use of his identity for commercial purposes is a violation of the Illinois Right of Publicity Act ("IRPA"). In that same count, Yeager alleges Innovus's actions violated common law or statutes protecting the right to publicity in all fifty states. R. 15 ¶ 46.

The IRPA grants to each individual the "right to control and to choose whether and how to use [his or her] identity for commercial purposes," and prohibits use of "an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 ILCS 1075/10, 1075/30. The parties do not dispute that claims under the IRPA are subject to the one-year statute of limitations. *See* R. 38 at 10; R. 42 at 6. *See also Blair v. Nevada Landing Partnership*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006) (holding that the IRPA supplants the common law tort of misappropriation of likeness and implicitly incorporates the one-year limitations period applicable to that tort); *Martin v. Wendy's International*, 183 F. Supp. 3d 925, 930 (N.D. Ill. 2016) ("The weight of authority, including the only decision by an Illinois state court to address the issue, holds that a one-year limitations period applies to IRPA claims.").[4] Rather, the parties first dispute when the limitations period accrued. Innovus claims it accrued on the date of the first infringing publication, while Plaintiffs claim it did not accrue until the offending conduct ceased.

Plaintiffs' allegations with regard to this claim can be broken up into two categories. First, Plaintiffs generally allege Innovus "circulated various advertisements and marketing materials, and/or [has] published advertisements and marketing materials on digital and print mediums including in newspapers,

---

[4] The Seventh Circuit has not opined if the one-year (versus a five-year) statute of limitations is appropriate on these claims. *See Martin v. Living Essentials, LLC*, 653 F. App'x 482, 486 (7th Cir. 2016). If a five-year limitations period applies, Plaintiffs are well within the limitations period.

magazines, pamphlets, and on Facebook, Twitter, Instagram, Pinterest, and Amazon, some or all of which are accessible by the citizens of all fifty (50) states of the United States." R. 15 ¶ 34. Plaintiffs do not allege when these types of advertisements were first published. Second, Plaintiffs specifically allege Innovus published advertisements in several local channels. For example, Innovus first published the article in the "News Star" in Louisiana in July 2016, followed by the "Gwinnet Daily Post" in Georgia in September 2016, the "Star Press" in Indiana in September 2016, the "Greenville Sun" in Tennessee in October 2016, and so on in local publications in Michigan, Texas, New York, Hawaii, California, Illinois, Colorado, etc. through February 2018. *Id*.

The Illinois appellate court has stated that generally, "a cause of action accrues and the limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Blair*, 859 N.E.2d at 1192. But "an exception to the general rule exists when the tort at issue involves a continuing or repeated injury." *Id*. Under the "continuing violation rule," the limitations period does not begin to run until the date of the last injury or the date the tortious acts cease. *Id*. at 1193. "A continuing violation is occasioned by continuing unlawful acts and conduct, not by continual ill effects from an initial violation. However, where there is a single overt act from which subsequent damages may flow, the statute begins to run on the date the defendant invaded the plaintiff's interest and inflicted injury, and this is so despite the continuing nature of the injury." *Id*. In *Blair*, the court found that the act of publishing the plaintiff's picture in various mediums around a casino did not fall

into the "continuing violation" exception and instead constituted a single overt act. The court noted that although the picture was displayed via several mediums over a period of time, it was used for a single purpose, to advertise one steakhouse, and targeted a single audience, casino patrons. *Id*. As a result, the plaintiff had alleged only one overt act with continual effects. But the court noted that a republication can constitute a new cause of action if the publication is altered so as to reach a new audience or promote a different product. *Id*. at 1194.

Innovus cites to two district court cases in support of its argument that it did not target new audiences. The Court does not find either case persuasive. In *Troya Int'l, Ltd. v. Bird-X, Inc.*, 2017 WL 6059804 (N.D. Ill. Dec. 7, 2017), the defendant Bird-X sold pest control products designed to steer birds away from airports, transit facilities, wind farms, power stations, and the like. The plaintiff was a distributor of the product and created a video depicting him using the product. Bird-X published the videos on its own website and then subsequently uploaded the video to vimeo.com, metacafe.com, and youtube.com. The court held that "[r]egardless of the different media or websites Bird-X exploited to display Hikmet's video, its republication of the video was intended to promote 'a single product' (Bird-X), used for a single purpose (showing that Bird-X products work), and accompanied by no significant alterations of the video to reach a new audience." *Troya*, 2017 WL 6059804, at *14. The re-airings of the video did not reach a new audience because the first video was hosted on Bird-X's website and was "thus viewable to any of its prospective customers the world over." *Id*. In *Martin v. Living Essentials, LLC*, the extent of the court's discussion of

the continuing violation exception was a brief mention that "the repeated airing of the Commercial still constitutes a single overt act, such that the limitations period does not toll" without discussion as to whether the commercial reached new audiences. 160 F. Supp. 3d 1042, 1046 n.4 (N.D. Ill.), *aff'd*, 653 F. App'x 482 (7th Cir. 2016).

Here, however, Plaintiffs plausibly allege advertisements that were directed at new audiences either through local publications or through new channels that may target different individuals—such as users of Facebook versus Instagram or individuals that do not read local newspapers. *See Wells v. Talk Radio Network-FM, Inc.*, 2008 WL 4888992, at *3 (N.D. Ill. Aug. 7, 2008) (distributing promotional discs in new markets sufficient to meet the continuing violation exception); *Maremont v. Susan Fredman Design Grp., Ltd.,* 772 F. Supp. 2d 967, 971-72 (N.D. Ill. 2011) (applying the continuing violation rule where the plaintiff "alleged that Defendants continually invaded her interest by impersonating her in multiple Posts and Tweets discussing different aspects of interior design" for over two years). Unlike both *Troya* and *Martin*, where the defendants used similar channels to advertise or advertised to similar markets, Innovus here used several different channels (local newspapers, social media, other digital channels) and different geographic locations to continuously advertise to new audiences. For these reasons, the Court finds Plaintiffs have sufficiently alleged a continuing violation.

Because Plaintiffs allege a continuing violation, Plaintiffs' cause of action accrued when the publications ceased, on February 2, 2018.[5] As such, Plaintiffs' complaint filed on January 19, 2018 was timely.

As to Plaintiffs' remaining allegations regarding various state statutes, the Court agrees with Innovus that Plaintiffs have failed to sufficiently plead a claim under the laws of those states by citing only to the state code. If Plaintiffs wish to bring claims under those statutes, they may amend their complaint with additional information regarding the elements of those statutes. For now, that portion of Count I is dismissed and only the allegations regarding the Illinois Right of Publicity Act remain.

### C. Lanham Act (Count II)

In Count II, Plaintiffs claim Innovus violated Section 43(a) of the Lanham Act when it used Yeager's identity, including his name and persona, in advertisements that falsely imply Yeager's endorsement of Innovus's goods and services. R. 15 ¶ 51. Plaintiffs allege that Innovus's unauthorized use of Yeager's identity is likely to cause confusion and misrepresents the nature of Innovus's goods. *Id*. ¶ 52.

Innovus, on the other hand, argues Plaintiffs fail to state a claim under the Lanham Act because: (1) they fail to satisfy the heightened pleading standard under

---

[5] The date of the last publication was shortly after the filing of the complaint. Plaintiffs allege 23 different publications within the year before they filed their complaint (R. 15 ¶ 34), sufficiently satisfying their obligations now with regard to the limitations period.

Rule 9(b) required for pleading a claim of fraud; and (2) they do not and cannot plead a commercial interest in Yeager's name and image.

Innovus's first argument, that Plaintiffs did not allege their Lanham Act claims with particularity as required by Rule 9(b), is easily rejected. Plaintiffs cite to several articles using Yeager's name, including the name of the publication, and the date on which the article was published. R. 15 ¶ 34. They also directly cite to several quotes in the articles falsely attributed to Yeager. *Id.* ¶ 34. Further, Plaintiffs attached a copy of the article, which supports their allegations, to their complaint. *See also* R. 15-1. Plaintiffs' allegations are specific and sufficient to meet the particularity requirements of Rule 9(b).

Second, Innovus contends that Plaintiffs have failed to allege a commercial interest in Yeager's individual name and reputation for Lanham Act standing. A plaintiff has "standing" under section 43(a) of the Lanham Act if he can properly plead and prove "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014). To satisfy this requirement, Yeager must "at least allege an existing intent to commercialize an interest in identity." *Condit v. Star Editorial, Inc.*, 259 F. Supp. 2d 1046, 1052 (E.D. Cal. 2003); *Hutchinson v. Pfeil*, 211 F.3d 515, 521 (10th Cir. 2000) ("mere potential of commercial interest . . . is insufficient to confer standing for [a] false association claim").

Here, Plaintiffs allege that Yeager was the "public face of [Midwest] throughout the pharmaceutical industry." R. 15 ¶ 3. They also allege that his success and competitiveness in his field "depends, at least in part, upon his reputation for expertise and professionalism." *Id.* ¶ 12. Further, Yeager alleges that his endorsement carries a fair market value that was diminished by Innovus's conduct. *Id.* ¶¶ 38-40. Plaintiffs have sufficiently alleged that Yeager's identity is used for commercial interests in conjunction with Midwest. *See Maremont v. Susan Fredman Design Grp., Ltd.*, 2011 WL 6101949, at *4 (N.D. Ill. Dec. 7, 2011) (protectible commercial interest in plaintiff's personal social media following because it was created for economic benefit and could be used to promote employer).

Unlike the cases Innovus cites in support of its argument, Yeager does not allege his name is used solely for personal or individual professional interests. *See e.g.*, *Nieman v. Versuslaw, Inc.,* 2012 WL 3201931, at *5 (C.D. Ill. Aug. 3, 2012) (plaintiff lacked standing to bring Lanham Act claim because "Plaintiff's individual reputation in the insurance industry is not the commercial interest the Lanham Act seeks to protect"); *Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 881 (E.D. Wis. 2009), *aff'd*, 623 F.3d 436 (7th Cir. 2010) (allegations that plaintiff's name has commercial value because of her humanitarian endeavors, positive and wholesome image, and the popularity of her scholarly posts on the Internet was insufficient to bring a Lanham Act claim). Nor does Yeager need to allege he is a celebrity to have commercial interests in his identity. *See Arnold v. Treadwell*, 642 F. Supp. 2d 723, 735 (E.D. Mich. 2009). In fact, Innovus used Yeager's name for commercial interests

in an advertisement promoting the product, indicating his name did have at least some commercial value. Plaintiffs have satisfied the standing requirement for their Lanham Act claim.

### D. Illinois Deceptive Trade Practices Act (Count III)

Count III of Plaintiffs' complaint alleges a violation under 815 ILCS 510/2(a) of the Illinois Deceptive Trade Practices Act, which provides for recovery against a person engaged in deceptive trade practices that cause a likelihood of confusion. Plaintiffs allege Innovus's commercial advertisements, publications, and marketing materials featuring Yeager created a likelihood of consumer confusion by falsely claiming Yeager, and by extension, Midwest, had a connection with Innovus's goods when, in fact, none existed. R. 15 ¶ 58. Plaintiffs also allege Innovus's advertisements have "disparaged, and continue to disparage, [Yeager's] name, reputation and scientific practice, and by extension, the brand identity of Midwest." *Id.* ¶ 61.

The Illinois Deceptive Trade Practices Act "does not provide a cause of action for damages, but it does permit private suits for injunctive relief and has generally been held to apply to situations where one competitor is harmed or may be harmed by the unfair trade practices of another." *Greenberg v. United Airlines*, 563 N.E.2d 1031, 1036-37 (Ill. App. Ct. 1990); *Power Cell LLC v. Spings Window Fashions, LLC*, 2018 WL 1911765, at *2 (N.D. Ill. Apr. 23, 2018); *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017) ("The likelihood of future harm occurring absent an injunction is an element of liability on the claim, not merely a separate element of damages.").

Plaintiffs have failed to state a claim for relief because they allege only past harm arising from the publication of the advertisements, and no threat of future misrepresentations to warrant injunctive relief. Plaintiffs allege the last advertisement was published in February 2018. Plaintiffs' allegation that Innovus "continues to disparage" Yeager's name is not supported by any facts pleaded in the complaint.[6] As a result, Plaintiffs have failed to state a claim for relief on their Illinois Deceptive Trade Practices Act claim, and their claim is dismissed without prejudice.

### E. Illinois Consumer Fraud and Deceptive Business Practices Act (Count IV)

Count IV likewise is dismissed because Plaintiffs fail to plead an essential element for a cause of action under the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"). When the plaintiff is a private party, "an action brought under the ICFA [must] show he suffered 'actual damage' as a result of the defendant's violation of the act." *Camasta v. Joseph A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Not just any form of alleged damages will suffice. Rather, the "actual damage must arise from purely economic injuries." *Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 31 (Ill. App. Ct. 2010); *see also Morris v. Harvey Cycle & Camper, Inc.*, 911 N.E.2d 1049, 1053 (Ill. App. Ct. 2009) ("Actual damages must be calculable and measured by the plaintiff's loss.").

---

[6] Plaintiffs argue that ads with Yeager's name "can still be found in those newspapers and online." But no "right to be forgotten" exists under United States law. *See Garcia v. Google, Inc.*, 786 F.3d 733, 745-46 (9th Cir. 2015).

Plaintiffs fail to allege any monetary or economic injuries suffered because of Innovus's actions. Instead, Plaintiffs allege that the advertisements "cause irreparable damage to Dr. Yeager and Midwest's commercial interests by diminishing the value of their endorsement and by diminishing Dr. Yeager's reputation for professionalism, and scientific integrity." R. 15 ¶ 40. That does not equate to actual, calculable damages. As a result, Innovus's motion to dismiss on this count is granted without prejudice.

### F. False Light (Count V)

Finally, in Count V, Plaintiffs allege Innovus caused Yeager to be surrounded by publicity putting him in a false light by referring to him as "America's Sex Doctor;" associating him with lewd, lascivious, inappropriate, inflammatory, and offensive language including remarks suggesting "Dr. James L. Yeager's new cream" enables men to "to exercise sexual power over women again;" misrepresenting the circumstances of the creation of the product, stating for example that, "[f]or years, men begged Dr. Yeager for a solution that would work to end lack of penile sensitivity;" falsely quoting Yeager; and falsely stating Yeager offered a satisfaction guarantee on the product. *Id.* ¶ 35.

Innovus first argues that Plaintiffs have missed the one-year statute of limitations using the same argument discussed above under Plaintiffs' Illinois Right to Publicity claim. For those same reasons, Innovus's argument fails.

Innovus next argues that Plaintiffs fail to state a claim. To state a claim for false light under Illinois law, the plaintiff must show (1) that he was placed in a false

light before the public as a result of the defendant's actions; (2) the false light in which he was placed would be highly offensive to a reasonable person; and (3) the defendant acted with actual malice, that is, with knowledge that the statements were false or with reckless disregard to whether the statements were true or false. *Mouloki v. Epee*, 2016 WL 910496, at *2 (N.D. Ill. Mar. 10, 2016) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 209-10 (Ill. 1992)).

Plaintiffs have sufficiently stated a claim for false light under these standards. First, Innovus circulated advertisements using Yeager's name, implying that he had endorsed the product. Plaintiffs allege the quotes in the advertisements were falsely attributed to Yeager. R. 15 ¶ 35. This satisfies the first element of the claim.

As to the second prong, this element requires the Court to determine whether a finder of fact could decide that the false light in which Plaintiffs were placed would be highly offensive to a reasonable person. This element is met "when the defendant knows that the plaintiff, as a reasonable man, would be justified in the eyes of the community in feeling seriously offended and aggrieved by the publicity." *Kolegas*, 607 N.E.2d at 210. Plaintiffs contend labeling Yeager as "America's Sex Doctor" who wanted men to "exercise sexual power over women," along with other lewd and lascivious statements, *see* R. 15 ¶ 35, place Yeager in a light that would be highly offensive to a reasonable person. Taking all inferences in favor of Plaintiffs, the Court finds these statements could be highly offensive to a reasonable person. *See Lozier v. Quincy Univ. Corp.*, 2019 WL 409368, at *11 (C.D. Ill. Jan. 31, 2019) (statements that plaintiff was a liar and the source of an investigation could be highly

offensive to a reasonable person on a motion to dismiss); *Doe v. Templeton*, 2004 WL 1882436, at *3 (N.D. Ill. Aug. 6, 2004) (disclosure of plaintiff's sexual orientation could be highly offensive); *John v. Wheaton Coll.,* 2014 IL App (2d) 130524-U, ¶ 75 (details of sexual relations could be highly offensive to a jury).

Finally, Plaintiffs sufficiently allege Innovus published these advertisements while knowing that Yeager had not actually made those statements and that he had not endorsed the product. *Id.* ¶ 48. Innovus's motion to dismiss is thus denied.[7]

## CONCLUSION

For the foregoing reasons, Innovus's motion [37] is denied in part as to its personal jurisdiction argument. The motion is granted in part as to Counts III and IV and denied as to the remaining counts. If Plaintiffs believe they can cure the deficiencies identified in this opinion as to the dismissed counts and allegations, they may move for leave to file an amended complaint on or before February 26, 2019. The motion should attach a redlined comparison between the current complaint and the proposed amended complaint, and it should be supported by a brief of no more than

---

[7] On reply, Innovus makes a new argument that Plaintiffs also fail to plead special damages with regard to their false light claim. Arguments raised for the first time on reply are waived. *United States v. Waldrip*, 859 F.3d 446, 451 (7th Cir. 2017). In any event, Innovus fails to cite to any law describing what constitutes special damages and whether Plaintiffs' allegations are sufficient to meet those standards. "The court will not research and consider the details of defendant's argument where defendant has done little more than provide what would be an opening paragraph to a more properly framed argument." *Dawson v. W. & H. Voortman, Ltd.*, 853 F. Supp. 1038, 1046 (N.D. Ill. 1994); *United States v. Smith,* 26 F.3d 739, 743 (7th Cir. 1994) (courts need not research and construct legal arguments for parties).

five pages describing how the proposed amended complaint cures the deficiencies in the current complaint.

ENTERED:

Dated: February 5, 2019

_____
Honorable Thomas M. Durkin
United States District Judge